**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MASIH ALINEJAD<br>497 Marlborough Road,<br>Brooklyn, NY 11226<br>          Plaintiff,<br><br>          v.<br><br>THE ISLAMIC REPUBLIC OF IRAN,<br>SEYED ALI HOSSEINI KHAMENEI,<br>THE JUDICIARY OF IRAN,<br>          AND<br> THE ISLAMIC REVOLUTIONARY<br>GUARD CORPS,<br><br>     c/o Ministry of Foreign Affairs<br>     Khomeni Avenue,<br>     United Nations Street<br>     Tehran, Iran<br><br>               Defendants. | Case #:__ 1:19-cv-3599 |

## **COMPLAINT**

1. Plaintiff, Ms. Masih Alinejad, a prominent Iranian American journalist, author, and political activist, by and through undersigned counsel, brings suit against Defendants the Islamic Republic of Iran, Seyed Ali Hosseini Khamenei the Supreme Leader of Iran, the Judiciary of Iran, and the Islamic Revolutionary Guard Corps ("IRGC") (collectively, "Iran" or "Iranian Government" or "Defendants") under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA"),  and Torture Victim Protection Act of 1991 ("TVPA") for severe personal injuries and other irreparable harm suffered as a result of Defendants' unlawful acts of terrorism, torture, hostage taking, and other torts against; Plaintiff, Mr. Alireza Alinejad-Ghomi (Plaintiff's brother), and Ms. Zarrin Badpa, (Plaintiff's mother).

2. Plaintiff, Ms. Masih Alinejad,(A/K/A Masoumeh Alinejad-Qomi) brings this complaint in order to impose substantive punitive damage against Defendants to prevent similar actions, and recover for the actions of the Iranian government in torturing and wrongfully imprisoning Mr. Alireza Alinejad-Ghomi and for harassing and wrongfully interrogating Ms. Zarrin Badpa. Mr. Alireza Alinejad-Ghomi was taken as a political hostage and continues to be tortured and  imprisoned in order to discredit and intimidate Ms. Masih Alinejadand to pressure her to prevent her from speaking out against the Iranian regime. Ms. Zarrin Badpa was arrested and interrogated by Defendants also to discredit, intimidate, and place pressure on the Plaintiff. Further, Mr. Alireza Alinejad-Ghomi was detained and Ms. Zarrin Badpa was interrogated in order to preclude Ms. Masih Alinejad from continuing her career as a journalist, author, and political activist working to criticize the Iranian government and bring international attention to the regime's human rights abuses, in particular women's rights. Plaintiff brings this action under section 1605A of the Foreign Sovereign Immunities Act, which provides for private causes of action against a state sponsor of terrorism, in this case the Islamic Republic of Iran, for personal injury caused by acts of torture. Plaintiff also brings this action under TVPA, imposing liability on Iran's Supreme Leader, Seyed Ali Hosseini Khamenei for committing torture on Mr. Alireza Alinejad-Ghomi and Plaintiff.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter and over Defendants pursuant to 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2) and 1605A(a)(1), which create subject matter jurisdiction and personal jurisdiction for civil actions for personal injuries against State Sponsors of Terrorism and their officials, employees, and agents.

4.  28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for personal injury and related torts.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

## PARTIES

6.  Plaintiff, Ms. Masih Alinejad is a journalist, author, and political activist originally from Iran. Ms. Alinejad has a BSC in Communication Studies from Oxford Brookes University located in Oxford, United Kingdom. She currently works as a presenter and producer at VOA Persian Service, a correspondent for Radio Farda, a frequent contributor to Manoto television, and a contributing editor to *IranWire*. Ms. Alinejad is well known for her criticism of Iranian authorities. Ms. Alinejad has won several awards, including a human rights award from UN Watch's 2015 Geneva Summit for Human Rights, the Omid Journalism Award from the Mehdi Semsar Foundation, and a "Highly Commended" AIB Media Excellence Award. She was forced to flee Iran in 2009 and moved to the United States on July 24, 2014. Ms. Alinejad became a United States citizen on October 17, 2019. She is a domiciliary and resident of New York.

7.  Defendant the Islamic Republic of Iran is a foreign state. Iran is a theocratic republic with an elected head of government and a head of state—the Ayatollah or Supreme Leader—appointed for life by a council of theologians. The Supreme Leader controls the Guardian Council of the Constitution, which interprets the Iranian Constitution, supervises elections (including by determining which candidates may run), and exercises significant

influence over the legislative, executive, and judicial branches of government, as well as the military and IRGC.

8. Defendant Seyed Ali Hosseini Khamenei has been Iran's Supreme Leader since 1989. He was previously the President of Iran from 1981 to 1989. As Supreme Leader, Khamenei is the head of state of Iran and the commander-in-chief of its armed forces. For this reason, he is considered the most powerful political authority in the country. As Supreme Leader, Khamenei can issue decrees and make the final decisions on the main policies of the government in fields such as economy, the environment, foreign policy, and national planning within Iran. Khamenei has direct control over the executive, legislative and judicial branches of government, as well as the military and media. President Donald J. Trump imposed secondary sanctions on Ali Khamenei stating that: "in light of the actions of the Government of Iran…to promote international terrorism…hereby order: Section 1. (a) All property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in: (i) the Supreme Leader of the Islamic Republic of Iran and the Iranian Supreme Leader's Office (SLO)". Exec. Order No. 13876, 84 Fed. Reg. 30574 (June. 26, 2019).

9. Defendant, the Judiciary of Iran is a branch of the Iranian government responsible for the courts and legal system. The 1979 Constitution of the Islamic Republic of Iran called for the judiciary to be an independent power, and charges it with investigating and passing judgment on grievances, supervising the proper enforcement of laws, uncovering crimes, prosecuting, punishing, and chastising criminals, and taking suitable measures to prevent

crime and reform criminals. The Head of the Judiciary, known also as "Chief Justice of Iran" is to be appointed by the Supreme Leader and serve for a period of five years. Judicial authority is constitutionally vested in the Supreme Court and the four-member High Council of the Judiciary.

10. Defendant the Iranian Revolutionary Guard Corps or IRGC is a military organization under the control of the Guardian Council. The IRGC was established in the wake of the Islamic Revolution to act as the country's "ideological custodian"[1] and is generally understood to be one of the most reactionary, powerful, and oppressive factions of the Iranian Government. The IRGC fields an army, navy, air force, and intelligence service, and it conducts foreign operations through its paramilitary arm, the Quds Force. The Quds Force has primary responsibility for arming pro-Iranian military groups across the Middle East and beyond and has been designated by the U.S. Department of Treasury as a sponsor and supporter of terrorism.[2]

## STATEMENT OF FACTS

11. Ms. Masih Alinejad is an Iranian American journalist, author and political activist who is well known for her criticism of Iranian authorities.

12. Ms. Alinejad began her career in journalism in 2001.

13. In 2008, Ms. Alinejad wrote another controversial article criticizing Iranian politician Mahmoud Ahmadinejad and his followers, which was regarded by the Iranian government as offensive towards the Iranian president and the people of Iran.

---

1. Greg Bruno et al., *Iran's Revolutionary Guard*, COUNCIL ON FOREIGN RELATIONS (Jun. 14, 2013), www.cfr.org/iran/irans-revolutionary-guards/p14324.

2. U.S. DEP'T OF TREASURY, *Blocking Property and Prohibiting Transactions with Persons who Commit, Threaten to Commit, or Support Terrorism*, www.treasury.gov/resource-center/sanctions/Programs/Documents/terror.pdf.

14. In aftermath of the disputed 2009 Iranian Presidential election, due to her journalistic pursuits and political activism, Ms. Alinejad was forced to flee from Iran in 2009 out of fear for her safety. At this time, she spent about five years documenting human rights abuses by the Islamic Republic of Iran in the aftermath of Iran's rigged 2009 presidential elections.

15. In 2010, Ms. Alinejad along with a group of Iranian writers and intellectuals established the "IranNeda" foundation as an outlet for protesting the Iranian government.

16. In 2014, Ms. Alinejad launched a campaign on the social media website Facebook with a page entitled "My Stealthy Freedom" or "Stealthy Freedoms of Iranian Women", which protests compulsory hijab wearing by inviting Iranian women to post pictures of themselves without a hijab. In Iran, women who appear in public without a hijab risk being arrested. The campaign quickly attracted international attention and has garnered hundreds of thousands of followers on Facebook.[3]  Currently the campaign has more than 1 million followers. In 2017, Ms. Alinejad expanded the campaign through a "White Wednesdays" initiative,[4] which encourages women to post pictures and videos of themselves wearing white headscarves or pieces of white clothing as symbols of protest. This campaign is now the longest-running civil disobedience campaign for women's rights against the Islamic Republic of Iran. Ms. Alinejad has since stated that she is not opposed to the hijab but believes it should be a matter of personal choice.

---

3. Heather Saul, *My Stealthy Freedom: Women in Iran step up hijab campaign by filming themselves walking in public with their heads uncovered*, THE INDEPENDENT (April 2, 2016), https://www.independent.co.uk/news/world/middle-east/my-stealthy-freedom-women-in-iran-step-up-hijab-campaign-by-filming-themselves-walking-in-public-10149226.html.

4. Eric Calabrese, *Iranian movement 'White Wednesdays' finds solidarity with U.S. Women's March*, NBC NEWS (January 21, 2018), https://www.nbcnews.com/news/us-news/iranian-movement-white-wednesdays-finds-solidarity-u-s-women-s-n839506.

17. In 2015, in response to her successful campaign, the Geneva Summit for Human Rights and Democracy, which is run by UN Watch, awarded her it's Women's Rights Award for "giving a voice to the voiceless and stirring the conscience of humanity to support the struggle of Iranian women for basic human rights, freedom, and equality."

18. Since 2015, as a contractor for the Voice of America, Ms. Alinejad has hosted a weekly 15-minute primetime show, called "Tablet" which features original video from inside Iran and profiles Iranian citizens. "Tablet" connects Iranians to Americans through short interviews on common themes illustrating both similar and different experiences. The program also has a weekly "timeline report" tracing the development of issues such as the international women's rights movement and relations between Washington, D.C. and Tehran, Iran.

19. In 2016, Ms. Alinejad launched a boycott campaign against the 2016 women's chess world championship, held in February 2017 in Tehran, Iran. The campaign was incited when a chess player refused to attend the world championships in Tehran because according to Iranian law, the players would be forced to wear hijabs during the tournament. Ms. Alinejad adamantly supported the boycott and co-wrote an op-ed about the situation in the Washington Post.[5]

20. In 2018, Ms. Alinejad's memoir, *The Wind in my Hair*, was published which details her journey as a young girl from a small village in Northern Iran to becoming and creating an online movement that sparked the nationwide protests against compulsory hijab laws in Iran.

---

5. Asra Q. Nomani and Masih Alinejad, *The American chess champion challenging Iran's hijab fetish*, THE WASHINGTON POST (October 5, 2016), https://www.washingtonpost.com/news/global-opinions/wp/2016/10/05/the-american-chess-champion-challenging-irans-hijab-fetish/.

21. In February 2019, Ms. Alinejad was invited to meet with United States Secretary of State Mike Pompeo. Mr. Pompeo thanked Ms. Alinejad for her bravery and continued dedication to her cause. During their meeting, Ms. Alinejad spoke with Mr. Pompeo about her concerns related to the Islamic Republic of Iran and the human rights violations committed by the regime.

22. As a direct result of Ms. Alinejad's activism, in July of 2019 Iranian officials warned that anyone sending videos to Ms. Alinejad faced up to ten years in prison.[6] Musa Ghazanfarabadi, the head of Tehran's Revolutionary Court, declared Ms. Alinejad an enemy of the state and told Fars News (an Iranian News outlet) that those people found to be sharing protest videos with Ms. Alinejad could be imprisoned for up to a decade under Iranian laws relating to cooperating with an enemy of the state.

23. During her extensive career, Ms. Alinejad has received numerous death threats from the Iranian government and its agents and women involved in her hijab campaign have been harassed, detained, arrested and sentenced to lengthy jail sentences inside Iran.

24. Due to her continued activism against the Iranian government, Ms. Alinejad has been unable to return to Iran or see her family for over ten years.  The government of Iran has continuously harassed and interrogated Ms. Alinejad's family as an effort to intimidate and put pressure on Ms. Alinejad to prevent her from continuing her activism. On July 19, 2018, three members of the Iranian state television department, including Mr. Ali Razvani (who has since been unmasked as someone who works with the Iranian security and intelligence services), went to Ms. Alinejad's family's home in Ghomikola, Babol, Iran to speak with Ms. Zarrin Badpa, the mother of Ms. Masih Alinejad. These members

---

6. Ahmed Vahdat, *Iranian women face 10 years for sharing videos of hijab removal*, THE TELEGRAPH (July 29, 2019), https://www.telegraph.co.uk/news/2019/07/29/iranian-women-face-10-years-sharing-videos-hijab-removal/.

of the state television department were attempting to force Ms. Zarrin Badpa to publicly

disown Ms. Alinejad on national television in Iran. Ms. Zarrin Badpa refused the

members of the state television department numerous times during the encounter,

however the three men would not leave until Ms. Badpa threatened to pour gasoline on

herself and set herself on fire.

**25.** Around the same time as the incident described in the preceding paragraph, in July of

2018, Ms. Alinejad's sister, Ms. Mina Alinejad, gave an interview on National Iranian

Television in which she publicly denounced her sister for advocating against Iran's

compulsory hijab laws.[7] While Ms. Mina Alinejad stated she was appearing on television

of her own free will, the government of Iran has a longstanding history of forcing

activists' families to appear unwillingly to denounce their relatives as a tactic to silence

critics of the regime.[8]

**26.** In a New York Times op-ed, Ms. Alinejad addressed the Iranian regime's threats to her

family stating,

> I have remained out of reach of the regime, but my family has taken the brunt.
> There has been financial pressure: threats to revoke business permits and
> licenses, for example. Some relatives have been threatened with firing until they
> proved their loyalty by offering secrets about me. And, of course, the Intelligence
> Ministry regularly sends officers to pay visits to my elderly parents. At one point
> they offered to arrange a 'family reunion in Turkey'. I can only imagine what they
> had in mind for me.[9]

---

7. *State TV of Iran Must End Its Use of Families to Discredit Journalists, Dissenters*, CENTER FOR HUMAN RIGHTS IN IRAN (August 9, 2018), https://iranhumanrights.org/2018/08/state-tv-of-iran-must-end-its-use-of-families-to-discredit-journalists-dissenters/.

8. *Id* ("'The longstanding use of Iran's state media to force activists' families to appear unwillingly to denounce their relatives shows the level the authorities will stoop to silence state critics,' said Sarah Leah Whitson, Middle East director at Human Rights Watch").

9. Masih Alinejad, *My Sister Disowned Me on State TV*, THE NEW YORK TIMES (July 31, 2018), https://www.nytimes.com/2018/07/31/opinion/iran-hijab-feminist.html.

27. Indeed, the Iranian government has pressured Ms. Alinejad's entire family, specifically her parents, to cease all communications with Ms. Alinejad and has banned Ms. Alinejad's family from leaving the country. Thus, since leaving Iran ten years ago, Ms. Alinejad has only been in contact with one family member on a regular basis, her brother, Mr. Alireza Alinejad-Ghomi.

28. While Ms. Alinejad's contact with her brother has been strictly apolitical, in nature for his protection, on the afternoon of September 24, 2019, a group of more than five agents from the intelligence unit of the Islamic Revolutionary Guard Corps (IRGC) raided Mr. Alireza Alinejad-Ghomi's home in Tehran, Iran. During this raid, Mr. Alinejad-Ghomi was arrested by the IRGC agents and taken into custody.[10] Mr. Alinejad-Ghomi was arrested, blindfolded and handcuffed by IRGC agents, and removed from his home, in front of his family including his two small children.[11]

29. On the same day, Mr. Hadi Lotfi and Ms. Leila Lotfi, two siblings of Ms. Alinejad's former husband, Mr. Max Lotfi, were also arrested in another raid at their home in the northern city of Babol, Iran.[12]  Mr. Hadi Lotfi was released after one day's detention, but Ms. Leila Hadi endured more than two weeks in jail before being released. While detained, Mr. Hadi Lotfi was interrogated by IRGC agents about Ms. Alinejad and Mr. Max Lotfi's activities and was told that any contact with Ms. Alinejad or "her team"

---

10. *Iran: Family of women's rights activist arrested in despicable attempt to intimidate her into silence*, AMNESTY INTERNATIONAL (September 25, 2019), https://www.amnesty.org/en/latest/news/2019/09/iran-family-of-womens-rights-activist-arrested-in-despicable-attempt-to-intimidate-her-into-silence/.

11. Melissa Van Brunnersum, *Iran detains family members of women's rights activist Masih Alinejad*, DW (September 26, 2019), https://www.dw.com/en/iran-detains-family-members-of-womens-rights-activist-masih-alinejad/a-50593709.

12. *Iran: Family of women's rights activist arrested in despicable attempt to intimidate her into silence*, AMNESTY INTERNATIONAL (September 25, 2019), https://www.amnesty.org/en/latest/news/2019/09/iran-family-of-womens-rights-activist-arrested-in-despicable-attempt-to-intimidate-her-into-silence/.

would be considered a criminal offense by Iranian authorities.[13] Before his release, Mr. Hadi Lotfi was told by IRGC agents that he was prohibited from leaving city of Babol, Iran and that he would be summoned again for more questioning.[14]

30. On September 26, 2018, two days after the arrest and detention of Mr. Alireza Alinejad-Ghomi, IRGC agents once again visited the home of Ms. Alinejad's mother, Ms. Badpa, in Ghomikola, Babol, Iran and interrogated Ms. Badpa for hours. Ms. Badpa was repeatedly questioned about conversations she had with Ms. Alinejad and about Ms. Alinejad's current husband.

31. After the interrogations, Ms. Alinejad spoke with her mother over the phone. Ms. Bapda told her daughter the following; "Six U.S. presidents have tried to overthrow the Islamic Republic and failed. What makes you think you can do anything? I disown you." Ms. Alinejad describes her mother as a simple woman who cannot read or write and does not follow the news. When communicating with Ms. Alinejad during that phone call, Ms. Badpa was simply repeating what she has been told again and again by IRGC agents. Ms. Badpa feared the IRGC agents and the repercussions that would occur if she did not concede to what they wanted, as a result, she stated that she "disowned" her daughter. She did this knowing, that the phone lines in Iran are not secure and that she was essentially making a public statement that could be used against Ms. Alinejad at any time. Ms. Alinejad has had no further contact with her since the September 2019 call.

32. Since the time of his arrest, Ms. Alinejad's brother, Mr. Alireza Alinejad-Ghomi, has been kept in solitary confinement in Evin prison outside of Tehran. Evin Prison is a

13. *Id.*

14. *Id.*

notorious facility where hostages and other political prisoners are kept in deplorable conditions, brutally interrogated, and subjected to physical distress, psychological abuse and in the words of the U.S. Department of State, "cruel and prolonged torture."[15]

33. In addition to being kept in solitary confinement, Mr. Alireza Alinejad-Ghomi has been denied access to legal representation of his choosing and instead has been limited to choose an attorney from a list pre-approved by the Judiciary of Iran. As of the date of this complaint, Mr. Alinejad-Ghomi has received no legal representation. Furthermore, Mr. Alinejad-Ghomi has been continually interrogated about his relationship with Ms. Alinejad. He has also lost a significant amount of weight during his time in Evin prison. While Mr. Alinejad-Ghomi has been allowed weekly contact with his immediate family, the contact is supervised by IRGC agents.

34. Ms. Alinejad commented on the arrest of her brother stating,

> He was not involved in any kind of political activity…But right now, his crime is my activities against compulsory hijab and challenging the Islamic Republic of Iran…This is what Stalin would do. This is what a dictator would do to its own citizens…The goal of the Islamic Republic was keeping me silent. I'm going to get louder against these hostage-takers.[16]

35. Amnesty International's Research and Advocacy Director for the Middle East and North Africa, Phillip Luther, also commented on Ms. Alinejad's brother's situation stating,

> These arrests are a blatant attempt by the Iranian authorities to punish Masih Alinejad for her peaceful work defending women's rights. Arresting the relatives of an activist in an attempt to intimidate her into silence is a despicable and cowardly move…Last night's arrests are another illustration of the Iranian authorities' chilling determination to crush women's rights activism. The fact that they have resorted to going after the family members of an activist is an indication

---

15. U.S. Dep't of State, *2015 Human Rights Reports: Iran* (Apr. 13, 2016), www.state.gov/j/drl/rls/hrrpt/2015/nea/252923.htm.

16. Melissa Van Brunnersum, *Iran detains family members of women's rights activist Masih Alinejad*, DW (September 26, 2019), https://www.dw.com/en/iran-detains-family-members-of-womens-rights-activist-masih-alinejad/a-50593709.

of just how threatened the authorities feel by the growing support for the women's rights movement in Iran and how desperate they are to put a stop to it…Instead of harassing and detaining the family members of Masih Alinejad, Iran's authorities should release them immediately and end their campaign of repression against women.[17]

36. The executive director of the Center for Human Rights in Iran, Hadi Ghaemi, released a statement concerning the Iranian regime's detainment of activists' families in which he said,

> The state's systematic attack on activists' families reveals the inhumane tactics they use to muzzle criticism of state policies…Targeting family members is expected from mafias, not law-abiding governments…Iranian authorities should stop violating citizens' basic rights by detaining and endangering activist and journalist's relatives…This abhorrent practice reveals the absence of the rule of law in Iran, and the unchecked power of a lawless intelligence establishment.[18]

37. The arrest and detention of Mr. Alinejad-Ghomi has severely impacted the psychological and emotional well-being of Ms. Alinejad. The government of Iran, the Judiciary of Iran, and the IRGC have taken Mr. Alinejad-Ghomi hostage in an attempt to silence Ms. Alinejad and force her to stop her political activism and campaign against mandatory hijab wearing for women in Iran. Ms. Alinejad suffers from depression and anxiety, including nightmares in the aftermath of her brother's arrest. Since Mr. Alinejad-Ghomi's arrest, Ms. Alinejad has seen a doctor regarding her depression and anxiety, and describes feeling "crushed" by the Iranian government's continued detention of her brother. Since Ms. Alinejad and Mr. Alinejad-Ghomi were very close and talked on a daily basis prior to his arrest, Mr. Alinjad-Ghomi's continued detention and inability to speak with her has caused Ms. Alinejad pain and suffering. Ms. Alinejad is constantly concerned over her

---

17. *Iran: Family of women's rights activist arrested in despicable attempt to intimidate her into silence*, AMNESTY INTERNATIONAL (September 25, 2019), https://www.amnesty.org/en/latest/news/2019/09/iran-family-of-womens-rights-activist-arrested-in-despicable-attempt-to-intimidate-her-into-silence/.

18. *Iran Arrests Activist Masih Alinejad's Brother Amid Crusade to Silence Citizens Based Abroad*, CENTER FOR HUMAN RIGHTS IN IRAN (September 25, 2019), https://www.iranhumanrights.org/2019/09/iran-arrests-activist-masih-alinejads-brother-amid-crusade-to-silence-citizens-based-abroad/.

brother's well-being in Evin Prison. For example, every time she eats a meal, Ms. Alinejad wonder aloud what her brother has been eating. As a result, Ms. Alinejad's food intake has significantly declined.

38. Further, Ms. Alinejad experiences extreme guilt related to her brother's arrest and constantly worries about their family and her brother's two small children who are now living in Iran without financial or emotional support from Mr. Alinejad-Ghomi. Ms. Alinejad blames herself for her family's suffering in the aftermath of her brother's arrest. Ms. Alinejad is especially concerned for her brother's eleven-year-old daughter, Baran, who now goes to school irregularly due to safety concerns, and has lost a significant amount of weight. Ms. Alinejad also lives in constant fear for the safety of other family members in Iran.

39. Ms. Alinejad's concerns for her family have been heightened by the fact that she has not been able to speak with any of her family in Iran. Ms. Alinejad's mother and father refuse to talk with her. While Ms. Alinejad has remained in contact with family friends in Iran to provide her with news about her family, however it has been extremely difficult to maintain contact with them.

40. Overall, Ms. Alinejad has suffered from extreme emotional and psychological trauma as a result of Mr. Alireza Alinejad-Ghomi's torture and detention and Ms. Zarrin Badpa's harassment and multiple interrogations.

## COUNT I
## 28 U.S.C. 1605A(c), PRIVATE RIGHT OF ACTION

41. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

42. Iran is a state sponsor of terrorism as described in 28 U.S.C. §1605A(a)(2)(A)(i).

43. Defendants and their agents were acting within the scope of their office, employment, or agency in committing the acts alleged herein, including, but not limited to, the hostage taking and torture of Mr. Alireza Alinejad-Ghomi and the harassment and multiple interrogations of Ms. Zarrin Badpa.

44. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of IRGC and its agents, whose acts were funded and directed by the Islamic Republic of Iran and the Judiciary of Iran, Plaintiff suffered, *inter alia*, physical pain and suffering, mental anguish, emotional pain and suffering, and/or economic losses resulting from Defendants' acts.

45. Pursuant to 28 U.S.C. §1605A(c), Plaintiff, who is a national of the United States, may assert a cause of action against Defendants for personal injury that was caused by acts of terror or the provision of material support or resources for such an act, if performed or provided by an official, employee, or agent of Defendants while acting within the scope of his or her office, employment, or agency.

46. Accordingly, as a result of Defendants' actions, Plaintiff seeks compensatory damages.

<u>**COUNT II**</u>
<u>**HOSTAGE TAKING**</u>

47. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

48. The FSIA confers jurisdiction on the courts and creates an independent federal cause of action to recover for injuries sustained as a result of terrorist acts, such as hostage taking or torture. Under the statute, Plaintiff must prove that (1) there was an act of "hostage taking" or "torture"; (2) the act was committed by the foreign state or "an official, employee, or agent of such foreign state"; (3) the act "caused (4) "personal injury or

death" (5) "for which the courts of the United States may maintain jurisdiction under this section for money damages."[19]

49. Seizing an individual in an effort to extract information from him to be used against him and others is hostage taking within the definition provided by the FSIA.

50. Ms. Zarrin Badpa has been seized and interrogated multiple times by Defendant's agents.

51. Mr. Alireza Alinejad-Ghomi has been seized by Defendants' agents. Mr. Alinejad-Ghomi is currently detained in solitary confinement in Evin Prison, a facility notorious for its brutal mistreatment of political prisoners and other individuals detained without due process. Mr. Alinejad-Ghomi has not been allowed access to counsel during this time.

52. There is significant and compelling evidence that Mr. Alinejad-Ghomi is being tortured, for the purpose of present forced and falsified testimony against the United States, himself and his sister Ms. Masih Alinejad.

53. Mr. Alinejad-Ghomi will suffer from acute psychological and emotional injury and other pain and suffering as a direct result of his detention and abuse—including solitary confinement, lack of medical care, inadequate nutrition, interrogations, physical distress, intimidation and disorientation, and denial of due process. His relationships with his family, including Plaintiff, have been permanently compromised by his experiences during his unjust and illegal imprisonment.

54. Plaintiff seeks damages for this count in the amount to be calculated during the trial.

## COUNT III
## ASSAULT AND BATTERY

55. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

---

19. 28 U.S.C. §1605A(a)(1) & (c); *Valencia v. Islamic Republic of Iran*, 774 F. Supp. 2d 1, 10-11 (D.D.C. 2010).

56. "An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such imminent apprehension."[20]

57. Hostage taking and torture, under the FSIA, constitute assault because "acts of terrorism are, by their very nature, intended to harm and to terrify by instilling fear of further harm."[21]

58. Mr. Alireza Alinejad-Ghomi is being held hostage and tortured by Defendants, resulting in harmful contact and fear of such harmful contact.

59. While in Defendants' custody, Mr. Alireza Alinejad-Ghomi has been routinely subjected to harmful and offensive contact, including being forcibly moved at gunpoint, beatings, and other forms of torture.

60. While in Defendants' custody, Mr. Alireza Alinejad-Ghomi is frequently threatened with harmful and offensive physical contact, including death and dismemberment. These threats place Mr. Alireza Alinejad-Ghomi in imminent apprehension of death, torture, abuse, and other physical and emotional injuries.

61. Plaintiff seeks damages for this count in the amount to be calculated during the trial.

## <u>COUNT IV</u>
## <u>FALSE IMPRISONMENT</u>

62. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

63. "(1) An actor is subject to liability to another for false imprisonment if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and

---

20. Restatement (Second) of Torts § 21 (Am. Law Inst. 1965).

21. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 76 (D.D.C. 2010).

(b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it."[22]

64. The unlawful arrest and imprisonment of Mr. Alireza Alinejad-Ghomi by Defendants constitutes false imprisonment.[23]

65. Defendants have unlawfully detained Mr. Alireza Alinejad-Ghomi in Evin Prison, an institution that is known both within Iran and globally for its brutal mistreatment of hostages, political prisoners, and human rights defenders. Mr. Alinejad-Ghomi is fully aware of this illegal detention. Mr. Alinejad-Ghomi has suffered physical, economic, emotional, and psychological harm as a result of this illegal detention.

66. Plaintiff seeks damages for this count in the amount to be calculated during the trial.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/SOLATIUM

67. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

68. "An actor who by extreme and outrageous conduct intentionally or recklessly causes severe emotional harm to another is subject to liability for that emotional harm and, if the emotional harm causes bodily harm, also for the bodily harm."[24]

69. When a defendant's conduct is directed at a third person, the Restatement generally requires that a plaintiff be a "close family member" and have "contemporaneously perceive[d] the event."[25]

---

22. Restatement (Second) of Torts §35 (Am. Law Inst. 1965).

23. *See, e.g., Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27, 34 (D.D.C. 2001); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 49 (D.D.C. 2001).

24. Restatement (Third) of Torts: Liability for Physical & Emotional Harm §46. *See also Valencia*, *supra* note 35, at 14; *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 28 (D.D.C. 2008).

25. Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 46 cmt. m. *See also Valencia*, *supra* note 35, at 14.

70. "All acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror, in their targeted audience."[26]

71. Because Ms. Zarrin Badpa has been interrogated numerous times and Mr. Alireza Alinejad-Ghomi has been taken hostage and tortured, Plaintiff need only demonstrate that they are close family members, and that emotional distress did result, in order to state a valid theory of recovery for intentional infliction of emotional distress.[27]

72. Defendants' extreme and outrageous conduct in interrogating Ms. Zarrin Badpa and holding Mr. Alireza Alinejad-Ghomi hostage and inflicting torture upon him caused Ms. Masih Alinejad to suffer from severe emotional harm, including depression, persistent feelings of guilt, loss of sleep, paranoia, loss of focus, and other symptoms of post-traumatic stress disorder.

73. Plaintiff seeks damages for this count in the amount of amount to be calculated during the trial.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

75. By establishing that Ms. Zarrin Badpa was interrogated and that Mr. Alireza Alinejad-Ghomi was taken hostage and/or tortured by Defendants and that emotional distress

---

26. *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 27 (D.D.C. 2009) (quoting *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002)).

27. *See Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 401 (D.D.C. 2015).

resulted, Ms. Zarrin Badpa and Mr. Alireza Alinejad-Ghomi (or Ms. Masih Alinejad) have established their right to recovery for intentional infliction of emotional distress.[28]

76. Defendants' conduct in interrogating Ms. Badpa and holding Mr. Alinejad-Ghomi hostage and inflicting torture upon him caused them to suffer severe emotional harm, likely including depression, suicidal ideation, symptoms of post-traumatic stress disorder, and irreparable harm to their relationships with friends and family.

77. Plaintiff seeks damages for this count in the amount to be calculated during the trial.

## COUNT VII
## PUNITIVE DAMAGES

78. Plaintiff repeats and realleges each and every allegation set forth above with like effect as if alleged herein.

79. Islamic Republic of Iran, who has been committing, sponsoring, and supporting acts of international terror against international and domestic targets, and was designated as a State Sponsor of Terror for decades, and its agents committed acts within the definition of section 1605A of FSIA which enable Plaintiff to demand punitive damages.

80. The acts of the Defendants, and each of them, carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The torture and anguish as above described was intended as a result by each Defendant. Ms. Zarrin Badpa, Mr. Alireza Alinejad-Ghomi, and their daughter and sister, Ms. Masih Alinejad, are each victims of the acts of terror committed by Iran with the material support of each of the Defendants. In accordance with the provisions of 28 U.S.C. §1605A(c) the Plaintiffs are thereby entitled to a maximal award of punitive damages to the fullest extent of the law.

---

28. *See Roth*, *supra* note 43, at 400-401; *Valencia*, *supra* note 35, at 14.

81. Iran, as a country with a history of human rights abuses and severe violations of international law, caused the suffering of many who were promoting internationally acceptable norms and human rights. Many Iranians and foreigners, including Americans, lost life, liberty, health, and property due to continued acts of terror conducted by Iran.

82. This case is among few bringing light to domestic acts of terror by Iran against human rights activists and those fighting the brutal regime of Iran. The punitive penalty of such activities should be so high as to prevent Iran from violating international human rights, torturing individuals, taking hostages, and committing extrajudicial killings. Iran has a defenseless record of human right abuses; it has been condemned internationally by each and every United Nations Commission. Unfortunately, there were no penalties imposed on Iran for its violations in similar cases at hand.

83. Plaintiff prays that judgment be entered, jointly and severally, against the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps., in the amount of $500,000,000.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against all Defendants and respectfully requests the following relief:

84. Plaintiff is entitled to compensatory damages for personal injury, assault, battery, and unjust imprisonment suffered as a result of hostage taking and torture.

85. Plaintiff is entitled to solatium damages for Mr. Alinejad-Ghomi's detention (under 28 U.S.C. § 1605A(c)).

86. Plaintiff is entitled to consequential damages for their lost earning potential and other long-term damages.

**87.** Plaintiff is entitled to aggravated damages for Defendants' cruelty, torture, and abuse.

**88.** Plaintiff is otherwise entitled to general damages and all other applicable damages.

**89.** Punitive damages should be assessed (under 28 U.S.C. § 1605A(c)).

**90.** The Court should award Plaintiff her full costs and attorneys' fees as incidental damages and as otherwise appropriate.

**91.** The Court should grant such further and other relief as this Court deems just and proper.

Dated: December 2, 2019

Respectfully submitted,

_____/s/_____

Ali Herischi, Esq. (MD0024)
Herischi & Associates LLC
7201 Wisconsin Ave., Suite 450
Bethesda, Maryland 20814
Phone: 301-363-4540
Fax: 301-363-4538
*Attorney for Plaintiff*